Adam S. Sieff*
Farrah C. Vazquez*
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071-3487
Tel: 213.663.6800
adamsieff@dwt.com
farrahvazquez@dwt.com

Ambika Kumar*
Nicole Saad Bembridge*
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Tel: 206.622.3150
ambikakumar@dwt.com
nicolesaadbembridge@dwt.com

*Attorneys for Plaintiff*
MAYDAY HEALTH

Chelsea T. Kelly*
Laura R. Handman*
Azeezat Adeleke*
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005-3317
Tel: 202 973.4200
chelseakelly@dwt.com
laurahandman@dwt.com
azeezatadeleke@dwt.com

Wendy S. Heipt*
LEGAL VOICE
907 Pine Street, No. 500
Seattle, Washington 98101-1818
Tel: 2016.954.6798
wheipt@legalvoice.org

Kelly O'Neill (Bar No. 9303)
LEGAL VOICE
P.O. Box 50201
Boise, Idaho 83705
Tel: 208.649.4942
wheipt@legalvoice.org

**Pro hac vice* applications forthcoming

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

**MAYDAY HEALTH**,

Plaintiff,

vs.

**RAÚL R. LABRADOR**, Attorney General of Idaho, in his official capacity,

Defendant.

Case No.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. RELEVANT BACKGROUND ..... 2

A. Mayday Publishes Truthful Public Health Information on Its Website ..... 2

B. Attorney General Labrador Threatens to Punish Abortion-Related Speech ..... 4

C. Mayday Contracts to Display A Mobile Billboard In Nampa, But Attorney General Labrador Refuses To Renounce Prosecuting Mayday For Displaying It ..... 5

D. Mayday Self-Censors in Response to The Attorney General's Unrenounced Threat ..... 7

E. Mayday Files This Action to Vindicate Its Constitutional Rights ..... 8

III. LEGAL STANDARD ..... 8

IV. ARGUMENT ..... 8

A. Mayday Is Likely To Prevail On The Merits ..... 8

1. The First Amendment Protects Mayday's Speech ..... 9

2. The Attorney General's Unrenounced Threats Violate the First Amendment ..... 11

B. Mayday Will Suffer Irreparable Harm Absent An Injunction ..... 14

C. Mayday Satisfies The Remaining Preliminary Injunction Factors. ..... 14

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963)....................12

*Bartnicki v. Vopper*,
532 U.S. 514 (2001)....................9, 12

*Bigelow v. Virginia*,
421 U.S. 809 (1975)....................11, 13

*Brown v. Ent. Merchants Ass'n*,
564 U.S. 786 (2011)....................13

*Cath. Charities v. Whitmer*,
162 F. 4th 686 (6th Cir. 2025)....................13

*Coffman v. Queen of Valley Med. Ctr.*,
895 F.3d 717 (9th Cir. 2018)....................8

*Cuviello v. City of Vallejo*,
944 F.3d 816 (9th Cir. 2019)....................14

*Dobbs v. Jackson Women's Health Organization*,
597 U.S. 215 (2022)....................2, 4, 9

*Elrod v. Burns*,
427 U.S. 347 (1976)....................14

*Free Speech Coalition, Inc. v. Paxton*,
606 U.S. 461 (2025)....................13

*Garrison v. Louisiana*,
379 U.S. 64 (1964)....................9

*Hecox v. Little*,
104 F.4th 1061 (9th Cir. 2024)....................8, 14

*Imperial Sovereign Ct. of Montana v. Knudsen*,
170 F.4th 820 (9th Cir. 2026)....................15

*Junior Sports Mags. Inc. v. Bonta*,
80 F.4th 1109....................12

*Los Angeles Press Club v. Noem*,
171 F.4th 1179 (9th Cir. 2026) ....................14

*Matsumoto v. Labrador*,
122 F.4th 787 (9th Cir. 2024) ....................5, 10, 11

*Mayday Health v. Jackley*,
2026 WL 143372 (S.D.N.Y. Jan 17, 2026) ....................6, 14

*Mayday Health v. Jackley*,
No. 1:26-cv-00078-KPF, ECF 48 (S.D.N.Y. Feb. 17, 2026)....................6

*McCullen v. Coakley*,
573 U.S. 464 (2014)....................13

*New York Times Co. v. United States*,
403 U.S. 713 (1971)....................12

*NIFLA v. James*,
160 F.4th 360 (2d Cir. 2025) ....................10

*Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*,
122 F.4th 825 (9th Cir. 2024) ....................4, 7, 11

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)....................12, 13

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
515 U.S. 819 (1995)....................12

*Smith v. Daily Mail Publishing Co.*,
443 U.S. 97 (1979)....................12

*The Florida Star v. B.J.F.*,
491 U.S. 524 (1989)....................12

*United States v. Playboy Ent. Grp., Inc.*,
529 U.S. 803 (2000)....................13

*W. Va. Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943)....................12

*Welty v. Dunaway*,
791 F. Supp. 3d 818 (M.D. Tenn. 2025)....................10

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008)....................8

*Yellowhammer Fund v. Marshall*,
776 F. Supp. 3d 1071 (M.D. Ala. 2025) ....................10

*Zepeda v. I.N.S.*,
753 F.2d 719 (9th Cir. 1983) ....................15

**Constitutional Provisions**

U.S. Const. amend. I.................... *passim*

**State Statutes**

Idaho Code
§ 18-112 ....................4
§ 18-113 ....................4
§ 18-204 ....................4
§ 18-603 ....................2, 4, 11, 15
§ 18-607 ....................2, 4, 11, 15
§ 18-622 .................... *passim*
§ 18-623 .................... *passim*
§ 18-8801 *et seq.* ....................4
§ 48-601 ....................2, 11, 15

## I. INTRODUCTION

Plaintiff Mayday Health is a 501(c)(3) non-profit public health education organization—not a medical provider that prescribes, handles, sells, arranges, or earns revenues from any healthcare service—dedicated to sharing accurate, evidence-based information about reproductive healthcare. After contracting to display a mobile billboard in Nampa, Idaho, reading "Pregnant? Don't want to be? Learn more at mayday.health," Mayday asked the Attorney General to disavow invoking the overbroad unconstitutional authority he has previously claimed to prosecute Mayday for engaging in this First Amendment-protected activity. The Attorney General—who disagrees with the lawful choices people may make with the information Mayday publishes, as well as Mayday's conviction that access to abortion is a human right—refused to do so, both in open court in another proceeding and in response to multiple inquiries. Because the First Amendment shields Mayday from having to choose between coerced silence and fending off the unrenounced threat of unconstitutional penalties for engaging in protected speech, Mayday brings this motion to prevent further violation of its constitutional rights.

Mayday will likely prevail on the merits of its First Amendment claim because the First Amendment absolutely protects the publication of truthful information on an issue of public concern. The U.S. Food and Drug Administration (FDA) has approved abortion pills for safe and effective use and adopted official guidance that currently permits those drugs to be prescribed online and delivered through the mail. The Attorney General may not prevent Mayday from providing this information to Idahoans—or information involving the availability of legal abortion services generally—just because Idaho has made most abortions illegal and the Attorney General disagrees with the content and the viewpoint that leads Mayday to publish it.

The remaining factors also favor preliminary injunctive relief. Mayday is suffering and

will continue to suffer irreparable injury from the violation of its First Amendment rights. The balance of equities and the public interest strongly favor the vindication of those rights, as the public has a profound interest in the dissemination of truth without fear of reprisal.

Mayday respectfully asks the Court to enjoin the Attorney General from taking any action under any law—including Idaho Code §§ 18-603, 18-607, 18-622, 18-623, and 48-601—to penalize or threaten to penalize Mayday for displaying its mobile billboard in Idaho, or for publishing its website to Idahoans.

## II. RELEVANT BACKGROUND

### A. Mayday Publishes Truthful Public Health Information on Its Website

Mayday is a nonprofit health education organization that operates an online clearinghouse for reproductive health resources at https://mayday.health. The website was launched in June 2022 in response to the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022). Mayday's mission is "to share information about abortion pills, birth control, and gender-affirming care in any state" and "empower people to make their own informed decisions about their own bodies." Declaration of Adam Sieff ("Sieff Decl.") at Ex. 1 at 1-2; Declaration of Leo Raisner ("Raisner Decl.") ¶ 2. It does not encourage or intend for any person to make any particular decision in response to the healthcare information it provides.

Mayday's website provides information about abortion, morning-after pills, birth control, and gender-affirming care. *See* Sieff Decl. Ex. 1; Raisner Decl. ¶¶ 2-3. For each category, the website provides a series of links to third-party organizations that provide access to such care or resources. For the abortion category, Mayday provides links to well-established third-party websites, including Aid Access, Cambridge Reproductive Health Consultants, A Safe Choice, Abuzz, and We Take Care of Us. Mayday also links to organizations offering supporting services, including the

Digital Defense Fund's privacy guide, the Miscarriage and Abortion Hotline, and the If/When/How Repro Legal Helpline. Raisner Decl. ¶¶ 3-4. Much of the linked information comes from clinicians, lawyers, and health experts. *Id.* If medically appropriate, some third-party clinics may provide access to abortion pills. *Id.* ¶ 4. The FDA has repeatedly and as recently as 2025 confirmed the safety of such medication, Sieff Decl. Exs. 4-7, as have independent and rigorous scientific studies published in peer-reviewed journals like the New England Journal of Medicine, *id.* Ex. 8.

Mayday does not sell, handle, or benefit financially from the sale of abortion pills, and operates independently from organizations that do. *See* Raisner Decl. ¶ 5. Nor does Mayday itself provide any medical or legal advice, charge any fee, collect any revenue related to the provision of medical or legal services, or obtain any other valuable consideration in exchange for disseminating its message. *Id.* It does not monetize its users' data. *Id.* Rather, Mayday simply wants people to know their options regarding reproductive healthcare. *Id.* ¶ 6. The information it publishes is provided as a donor-funded public service—free to users—as an expression of Mayday's values and beliefs. *Id.* Through its website and advocacy, Mayday provides truthful, non-commercial information of public concern, including resources for individuals seeking to understand their reproductive healthcare options. Mayday believes its work is essential to ensuring that individuals, regardless of their location, can make informed decisions about their health and wellbeing. *Id.*

Mayday's mission is nevertheless controversial. Attorneys General in Mississippi, Arkansas, and South Dakota have threatened or brought sham claims under their states' consumer protection laws in attempts to prevent Mayday from publishing in their states. *See, e.g.*, Sieff Decl. Exs. 10-12. These attorneys general have baselessly argued that the information Mayday publishes constitutes "deceptive" commercial advertising, or even aids, abets, or solicits criminal activity, and is thus unprotected. *See id.* None have prevailed on the merits of these claims.

### B. Attorney General Labrador Threatens to Punish Abortion-Related Speech

After *Dobbs* enabled Idaho to outlaw most abortions, the Attorney General asserted sweeping powers to not only prohibit the practice of an abortion, but also information with even the slightest tendency to promote access to abortion care. The Attorney General claims these powers under several Idaho laws. Idaho Code §§ 18-622 and 18-8801 *et seq.*, for example, make it a crime to perform or attempt to perform an abortion in the state. Idaho Code § 18-603 further states that anyone who "wilfully publishes any notice or advertisement of any medicine or means for producing or facilitating a miscarriage or abortion" commits a felony. Idaho Code § 18-607 adds that anyone who "offers to sell," "advertises, or displays for sale anything specially designed to terminate a pregnancy" commits a misdemeanor. Idaho Code § 18-623 makes it a felony to "recruit" an Idaho minor to obtain an abortion without their parent's knowledge. And Idaho law also treats any persons who "aid and abet" or otherwise "advise[] and encourage[]" the commission of an Idaho crime as principal offenders. *Id.* § 18-204. A conviction for any of these crimes carries penalties including jail time and fines. *Id.* §§ 18-112, 18-113.

The Attorney General asserted the authority to suppress and punish the dissemination of abortion-related information under these authorities in an opinion letter to Idaho Representative Brent Crane on March 27, 2023. Sieff Decl. Ex. 13. The letter stresses the Attorney General's view that Idaho law not only empowers him to prosecute persons who provide abortion pills, but also any person generally involved in "the promotion of abortion pills to the public." *Id.* at 2. It makes no exception for speech, such as educational materials, public health information, or advocacy. Although the Attorney General withdrew the opinion letter for procedural reasons, he refused to disavow its substance at a hearing in another case in this District, and the Ninth Circuit has determined that his position stated in the letter thus continues to constitute an actionable threat. *See Planned Parenthood Great Nw., Haw., Alaska, Ind., Ky. v. Labrador*, 122 F.4th 825, 834–36,

845–50 (9th Cir. 2024).

The Attorney General has also taken a broad view of his power to prosecute speech that, in his view, intends to encourage or enable abortions. In defending his authority to prosecute "abortion trafficking" under Idaho Code § 18-623, for example, the Attorney General argued that "any speech" intended to enable minors to obtain an out-of-state abortion "is integral to criminal conduct" and thus unprotected and subject to penalties. Appellant's Reply Br., *Matsumoto v. Labrador*, No. 23-3787, ECF No. 43.1 at 11 (9th Cir. filed Feb 7, 2024). The Ninth Circuit rejected that position, affirming the relevant parts of a preliminary injunction because the Attorney General's view of what speech he is allowed to punish "goes well beyond" what the First Amendment allows, reaching speech that does not solicit, aid, or abet any criminal activity—especially when his position is considered in conjunction with Idaho's broad aiding-and-abetting statute. *Matsumoto v. Labrador*, 122 F.4th 787, 811, 813 (9th Cir. 2024). Undeterred, the Attorney General continues to press an expansive view of what abortion-related speech he is empowered to label criminal conduct and prosecute. *See* Def's Mem. in Supp. of Mot. for Summ. J., *Matsumoto v. Labrador*, Case No. 1:23-cv-0323-DKG, ECF No. 137-1 at 15-16 (D. Idaho filed April 16, 2026) (arguing that speech that tends to encourage minors to obtain abortion care, without regard for parental consent, is speech integral to criminal conduct punishable as a deceptive practice).

### C. Mayday Contracts to Display A Mobile Billboard In Nampa, But Attorney General Labrador Refuses To Renounce Prosecuting Mayday For Displaying It.

To raise awareness about the availability of reproductive health services to communities across the country, Mayday publicizes its website through billboards, plane-pulled banners, art installations, apparel, and other tangible media. Raisner Decl. ¶ 5. As part of these efforts, on April 7, 2026, Mayday contracted with a sign-truck operator to display a mobile billboard displaying the message "Pregnant? Don't want to be? Learn more at www.mayday.health" in Nampa. *Id.* ¶ 7.

The billboard was to be displayed on a truck and driven around on April 20, 2026. Mayday made a non-refundable payment of $11,375 to secure the mobile billboard's placement. *Id*.

Mayday knew displaying the billboard in Nampa was likely to draw a negative reaction from Idaho state officials including the Attorney General. *Id.* ¶¶ 8-9. It was aware, for example, of the Attorney General's demonstrated hostility toward abortion, his assertion of broad authority to punish "the promotion of abortion pills," his refusal to disavow that position in open court, and his aggressive litigation positions taking an overbroad view of what types of abortion-related speech are putatively integral to criminal conduct. Given Mayday's own experiences fending off meritless threats from hostile state attorneys general in Mississippi, Arkansas, and South Dakota, Mayday sought to contact the Attorney General to avoid another needless dispute.

Mayday's counsel accordingly sent formal correspondence by email and FedEx to the Attorney General's office on April 8, 2026. *See* Sieff Decl. Ex. 14. The letter explained that Mayday's planned billboard campaign disseminated information and expressed a point of view fully protected by the First Amendment. Among other authorities, the letter cited decisions from a federal district court in the Southern District of New York temporarily enjoining the South Dakota Attorney General from penalizing Mayday for publishing an identical sign earlier this year, *Mayday Health v. Jackley*, 2026 WL 143372 (S.D.N.Y. Jan 17, 2026), and reaffirming that the First Amendment protects Mayday's speech, *Mayday Health v. Jackley*, No. 1:26-cv-00078-KPF, ECF 48 at 15:12-17:4 (S.D.N.Y. Feb. 17, 2026) (preliminary injunction warranted if Court had retained jurisdiction) (attached as Sieff Decl. Ex. 15 for ease of reference). The letter requested confirmation before April 15, 2026, that the Attorney General would take no action to prevent Mayday from displaying that billboard, nor penalize Mayday for doing so, under any state law.

After the requested deadline passed without a response from the Attorney General's office,

on the morning of April 17, 2026, Mayday's counsel sent an email forwarding its prior correspondence directly to deputy litigators in his office—James Craig, Aaron Green, and Kyle Grigsby—involved in defending the Attorney General's asserted authority to penalize abortion-related speech in both the *Matsumoto* and *Planned Parenthood* cases. Sieff Decl. Ex. 16. Receiving no response, Mayday's counsel, at around 11:00 a.m. Pacific Time that same day, called the Attorney General—including his general line, as well as the direct lines for Craig, Green, and Grigsby—and left individual voice messages with each of them requesting a conversation to discuss the same non-enforcement assurances. Sieff Decl. Ex. 17. The Attorney General's office did not return Mayday's calls. *Id.*

**D. Mayday Self-Censors in Response to The Attorney General's Unrenounced Threat**

Faced with the threat of impending and unrenounced prosecution for its speech—and potentially subject to imprisonment for up to five years, a fine of up to $50,000, or both—Mayday was forced to suspend its Nampa billboard campaign on April 17, 2026, and surrender its non-refundable payment, as it continued to seek assurances. Raisner Decl. ¶ 14. More than a week later, on April 27, 2026, a deputy in the Attorney General's office finally responded. Refusing to disavow bringing an enforcement action against Mayday, the deputy stated only that the "Attorney General does not provide legal advice to private parties." Sieff Decl. Ex. 18. Never mind that Mayday was not seeking legal advice. And never mind that attorneys general—including Attorney General Labrador—routinely enter into non-enforcement, stand-still, and similar agreements with potentially regulated parties.[1] The message from the Attorney General's office was clear: Mayday

[1] Attorney General Labrador often enters formal arrangements to that effect. *See* Consent Decree, *Planned Parenthood Great Northwest v. Labrador*, No. 1:23-cv-0142-BLW, ECF No. 193 (D. Idaho filed July 17, 2025); Consent Decree, *In re: Att'y Gen. Investigation of Kootenai Hosp. District*, No. CV25-24-0249 (Idaho Second Jud. Dist. Ct. filed May 10, 2024).

should stay silent, or else speak at its peril.

Although Mayday remains committed to its mission of providing truthful, evidence-based information to the public, the Attorney General's refusal to disavow legal action against Mayday has forced Mayday to weigh the risks and costs of defending legal actions against its desire to continue its educational efforts. Raisner Decl. ¶¶ 17-20. Already, Mayday has refrained from engaging in protected speech to avoid incurring future charges and legal costs defending that speech, including by suspending its Nampa billboard campaign. *Id.* And in light of the Attorney General's actions, Mayday is more closely vetting press interview requests and self-censoring the statements it makes publicly—a significant injury for a non-profit whose very mission is to raise awareness through media coverage. *Id.* ¶ 18.

**E. Mayday Files This Action to Vindicate Its Constitutional Rights**

Mayday filed this action on May 29, 2026, to prevent the Attorney General from silencing its protected speech. *See* Compl. (ECF No. 1).

## III. LEGAL STANDARD

A preliminary injunction should issue where a movant demonstrates (1) a likelihood of success on the merits, (2) irreparable harm absent preliminary relief, and that (3) the balance of equities and (4) the public interest both support an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717, 725 (9th Cir. 2018). The last two factors merge when, as here, the government is the opposing party. *Hecox v. Little*, 104 F.4th 1061, 1073 (9th Cir. 2024) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

## IV. ARGUMENT

**A. Mayday Is Likely To Prevail On The Merits**

The reproductive health information Mayday publishes is both true and of great public

interest. The Attorney General's unrenounced threat to penalize Mayday for publishing that information—or to prevent Mayday from publishing it at all—is an unconstitutional prior restraint, as well as a content- and viewpoint-based restriction of First Amendment-protected speech that fails strict or any level of constitutional scrutiny.

### 1. The First Amendment Protects Mayday's Speech

"Truth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). Truthful speech about matters of public concern thus enjoys virtually absolute constitutional protection. *See Bartnicki v. Vopper*, 532 U.S. 514, 527, 535 (2001) (First Amendment protected publication of truthful information on public issues even when the information had been leaked unlawfully).

The public health information on Mayday's website—and the billboards publicizing it to audiences offline—fall within the First Amendment's protections for truthful speech on matters of public concern. There is no question that "[a]bortion presents a profound moral question" of great public interest. *Dobbs*, 597 U.S. at 302. And the information at issue is literally and undisputedly true. Mifepristone and misoprostol are FDA-approved as safe and effective "to end an intrauterine pregnancy," and may be prescribed and distributed over the internet and by mail across the United States. *See* Sieff Decl. Exs. 5 and 6 at 1 (attaching FDA's current official Risk Evaluation and Mitigation Strategy (REMS) guidance); *see also id.* Exs. 4, 7-9 (FDA and independent studies confirming safety). Mayday likewise truthfully informs readers what third-party providers charge for abortion pills, where those providers mail abortion pills, and how long those providers predict it will take for the pills to arrive. *See id.* Ex. 3 at 1-2. Mayday does not provide legal advice or direct any action that would violate any state's laws. *Id.* Exs. 2-3; Raisner Decl. ¶ 5. Instead, Mayday links to third-party resources a reader can consult to make their own choices. Sieff Decl. Exs. 1-3;

Raisner Decl. ¶ 6.

Binding precedent, and decisions from federal courts across the country, leave no doubt that the First Amendment protects Mayday's speech. The Ninth Circuit has already explained to Attorney General Labrador that providing exactly this type of "information related to the availability of abortions, education on reproductive health care options, and instruction as to how to access an abortion legally" is speech the First Amendment "squarely protect[s]." *Matsumoto*, 122 F.4th at 812 (enjoining the Attorney General from making similar threats). And federal district courts have likewise held that the First Amendment protects sharing information about how "to get abortion pills and do a self-managed abortion or to seek abortion care outside" prohibition states, *Welty v. Dunaway*, 791 F. Supp. 3d 818, 831 (M.D. Tenn. 2025) (Gibbons, J., sitting by designation), as well as "any speech connected to obtaining such care" generally since abortion "is not unlawful" everywhere in the United States, *Yellowhammer Fund v. Marshall*, 776 F. Supp. 3d 1071, 1108 (M.D. Ala. 2025) (M. Thompson, J.).

The Second Circuit's decision in *NIFLA v. James*, 160 F.4th 360, 379-80 (2d Cir. 2025)—which affirmed protections for mirror-image publishing activities *by abortion opponents*—underscores the First Amendment's application here. That case involved anti-abortion non-profits' First Amendment rights to disseminate "links and instructions for accessing" third-party providers of unregulated abortion *reversal* services "so that women can receive more information about" these options and "if they so choose, be matched with a third-party provider." *Id.* at 375. Because the non-profits were "morally motivated," "receive no remuneration or financial benefit for engaging in" their speech, and "do not provide" the procedures, "but rather provide the public with information . . . and access to third-party providers," the Second Circuit affirmed that the First Amendment protected their websites. *Id.* at 375-76. So, too, Mayday's opposite viewpoint here.

It makes no difference that it is now illegal to provide most abortions in Idaho and some other states. The Supreme Court addressed this exact fact pattern in *Bigelow v. Virginia*, 421 U.S. 809 (1975), holding that a Virginia law criminalizing the dissemination of information with tendency to "encourage or prompt the procuring of an abortion" violated a Virginia newspaper's First Amendment right to publish information about, and endorse an organization that facilitated, access to abortions that were then illegal in Virginia. *Id.* at 811-12. The Court explained that the published material "conveyed information of potential interest and value to a diverse audience—not only to readers possibly in need of the services offered, but also to those with a general curiosity about, or genuine interest in, the subject matter," and that Virginia had no legitimate "interest in shielding its citizens" from this information. *Id.* at 822 & n.7, 827-28. The Attorney General has no legitimate interest in doing so here, either.

**2. The Attorney General's Unrenounced Threats Violate the First Amendment**

The Attorney General's unrenounced threats to punish and prevent Mayday from publishing truthful speech of public concern are actionable because the Attorney General has refused repeated requests to disavow enforcing Idaho Code §§ 18-603, 18-607, 18-622, and 48-601 against Mayday's protected expression, and continues to argue in open court for such authority. *See Planned Parenthood Great Nw.*, 122 F.4th at 838-39 (finding the Attorney General's refusal to disavow the broad enforcement authority claimed in the March 27, 2023 opinion letter sufficient to establish a threat of enforcement); *Matsumoto*, 122 F.4th at 798-99 (similar refusal to disavow enforcement of Idaho Code § 18-623 created actionable injury in fact). These unrenounced threats effect not just a prior restraint, but a content- and viewpoint-based restriction of speech. The strictest constitutional scrutiny applies several times over, and the Attorney General cannot satisfy that standard.

"[S]tate action to punish the publication of truthful information seldom can satisfy

constitutional standards." *Bartnicki*, 532 U.S. at 527 (citation omitted). The Supreme Court has never upheld state action to prevent or punish the publication of such information, whether they be state secrets, *New York Times Co. v. United States*, 403 U.S. 713, 714 (1971), names of juvenile delinquents, *Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 105–06 (1979), identities of rape victims, *The Florida Star v. B.J.F.*, 491 U.S. 524, 532–41 (1989), or even information obtained through "a stranger's illegal conduct," *Bartnicki*, 532 U.S. at 527, 535. Even when the Supreme Court has "hypothesiz[ed]" what "state interest[s] of the highest order" might justify restricting truthful speech on issues of public concern under the strictest scrutiny, it has confined those interests to the margins of ordinary discourse, such as preventing "publication of the sailing dates of transports or the number and location of troops" at sea in wartime. *Fla. Star*, 491 U.S. at 532–33 (quoting *Near v. Minnesota*, 283 U.S. 697, 716 (1931)).

This strictest possible scrutiny applies to the Attorney General's unrenounced threat not only because he seeks to impose formal and informal prior restraints preventing Mayday from publishing truthful information about reproductive healthcare, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (explaining that "the threat of invoking legal sanctions" against protected speech is an "informal" prior restraint subject to strict scrutiny), but also because the Attorney General's reasons for silencing Mayday are transparently predicated on contempt for "the specific motivating ideology" behind Mayday's publications. *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995). This kind of viewpoint-based regulation is the most "egregious form" of speech restriction, *id.*, because it seeks through suppression "to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion." *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Viewpoint-based restrictions are subject to at least strict scrutiny, *Reed v. Town of Gilbert*, 576 U.S. 155, 168-69, 171 (2015), and may be unconstitutional per se. *See Junior Sports*

*Mags. Inc. v. Bonta*, 80 F.4th 1109, 1123-24 & 1124 n.1 (9th Cir. 2023) (Van Dyke, J., concurring) (explaining that the Supreme Court "has repeatedly emphasized the First Amendment's near-absolute prohibition on laws that restrict speech based on the viewpoint of the speaker"); *Cath. Charities v. Whitmer*, 162 F. 4th 686, 696 (6th Cir. 2025) (same).

The Attorney General could not justify his threats even assuming strict scrutiny—and not a per se rule—applies. "Strict scrutiny is unforgiving" and effectively "fatal" "absent truly extraordinary circumstances." *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461, 484-85 (2025). State action subject to strict scrutiny is presumptively unconstitutional. *Reed*, 576 U.S. at 163. The government "bears the burden of proving" the suppression of speech is necessary to serve a compelling interest and is the least restrictive means of serving that interest. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 816 (2000). This means the government "must specifically identify an actual problem in need of solving, and the curtailment of free speech must be actually necessary to the solution." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011).

Nothing justifies the Attorney General's unrenounced threat to censor Mayday's speech under this standard. If the Attorney General's interest is preventing the dissemination of information that could enable readers to make the informed choice to obtain a legal abortion, that is not a compelling—much less legitimate—interest his office may pursue. *See Bigelow*, 421 U.S. at 822 & n.7, 827-28. If the interest is preventing *illegal* abortions, the Attorney General has less restrictive tools at his disposal that do not involve suppressing truthful public health information, including enforcing the statutes addressed in the Attorney General's March 27, 2023, opinion letter—including Idaho Code §18-622—against abortion *providers* who violate them. *See McCullen v. Coakley*, 573 U.S. 464, 490-92 (2014) (abortion-related speech regulation failed even intermediate scrutiny when the only conduct it legitimately proscribed was already criminalized by other state

laws). Mayday is not a provider, and his failure to do so is dispositive.

The Attorney General's unrenounced threats thus violate the First Amendment for the same reasons a New York federal court determined that the South Dakota Attorney General's threat to prosecute Mayday for displaying the same billboard publicizing its website violated the First Amendment in *Mayday Health*, 2026 WL 143372 at *1, and *Mayday Health*, No. 1:26-cv-00078-KPF, ECF 48 at 15:12-17:4 (attached as Sieff Decl. Ex. 15). The same conclusion applies here.

### B. Mayday Will Suffer Irreparable Harm Absent An Injunction

Mayday has already and will continue to suffer irreparable injury absent relief. Raisner Decl. ¶¶ 17-21. The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Because Mayday has shown that it is likely to succeed on the merits of its First Amendment claims, that is enough. *See Los Angeles Press Club v. Noem*, 171 F.4th 1179, 1190 (9th Cir. 2026).

Already, the Attorney General's refusal to disavow prosecution under Idaho law has had—and will continue to have—a chilling impact on Mayday's speech. Although Mayday has not stopped speaking altogether, it has unwillingly refrained from engaging in protected speech to avoid incurring future charges and legal costs defending that speech. Raisner Decl. ¶¶ 17-21. It has cancelled its mobile billboard campaign and refrained from posting any new signs in Idaho. *Id.* ¶¶ 14, 18. Those changes in Mayday's behavior are more than enough to establish a chilling effect. *See Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (a "chill" on First Amendment rights is irreparable harm "even if it results from a threat of enforcement rather than actual enforcement").

### C. Mayday Satisfies The Remaining Preliminary Injunction Factors.

The remaining factors—the balance of equities and the public interest—merge because the government is the defendant. *Hecox*, 104 F.4th at 1073. They favor a preliminary injunction here.

Absent relief, Mayday will suffer a loss of its First Amendment rights or substantial penalties for exercising those rights. Raisner Decl. ¶¶ 17-21. Equity and the public interest favor plaintiffs "whose First Amendment rights are being chilled" by government action, as it is "always in the public interest to prevent the violation of a party's constitutional rights." *Imperial Sovereign Ct. of Montana v. Knudsen*, 170 F.4th 820, 876 (9th Cir. 2026) (quotations omitted). In contrast, the Attorney General has no interest in unconstitutional threats. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).

## V. CONCLUSION

Mayday respectfully requests an order preliminarily enjoining the Attorney General from taking any action under any law—including Idaho Code §§ 18-603, 18-607, 18-622, 18-623, and 48-601—to penalize or threaten to penalize Mayday for displaying its mobile billboard in Idaho, or for publishing its website to Idahoans.

Dated: May 29, 2026

By: /s/ Adam S. Sieff
Adam S. Sieff

Adam S. Sieff*
Farrah C. Vazquez*
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071-3487
Tel: 213.663.6800
adamsieff@dwt.com
farrahvazquez@dwt.com

Ambika Kumar*
Nicole Saad Bembridge*
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104-1610
Tel: 206.622.3150
ambikakumar@dwt.com
nicolesaadbembridge@dwt.com

*Attorneys for Plaintiff*
MAYDAY HEALTH

By: /s/ Kelly O'Neill
Kelly O'Neill

Chelsea T. Kelly*
Laura R. Handman*
Azeezat Adeleke*
DAVIS WRIGHT TREMAINE LLP
1301 K Street NW, Suite 500 East
Washington, D.C. 20005-3317
Tel: 202 973.4200
chelseakelly@dwt.com
laurahandman@dwt.com
azeezatadeleke@dwt.com

Wendy S. Heipt*
LEGAL VOICE
907 Pine Street, No. 500
Seattle, Washington 98101-1818
Tel: 206.954.6798
wheipt@legalvoice.org

Kelly O'Neill (Bar No. 9303)
LEGAL VOICE
P.O. Box 50201
Boise, Idaho 83705
Tel: 208.649.4942
wheipt@legalvoice.org

**Pro hac vice* applications forthcoming

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below I served a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** was served by electronic mail upon all registered CM/ECF users, and by United States Postal service upon all non-registered CM/ECF users in this case as indicated below:

Raúl R. Labrador
Office of the Attorney General
State of Idaho
700 W. Jefferson Street
P.O. Box 83720
Boise, ID 83720

Dated this 29th day of May, 2026.

*/s/ Kelly O'Neill*
Kelly O'Neill